ORAL ARGUMENT NOT YET SCHEDULED

# UNITED STATES COURT OF APPEALS
# DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, <br><br> *Petitioners*, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, <br><br> *Respondents*. | No. 21-1014 <br> (lead) |
| AMERICAN LUNG ASSOCIATION, *et al.*, <br><br> *Petitioners*, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, <br><br> *Respondents*. | No. 21-1027 <br> (consolidated) |
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br> *Petitioner*, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, <br><br> *Respondents*. | No. 21-1054 <br> (consolidated) |

# EPA'S OPPOSITION TO CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO SET A BRIEFING SCHEDULE IN NO. 21-1054.

As anticipated in EPA's motion for an abeyance in these consolidated cases, Petitioner Center for Biological Diversity's (the "Center") request for a briefing schedule is—essentially—a retread of its already denied motion to sever. *See* EPA Motion for Abeyance at 3-4, 7-9, Doc. No. 1910291 (Aug. 16, 2021) (citing Motion to Sever, Doc. No. 1886791 (February 23, 2021) and Order, Doc. No. 1898749 (May 14, 2021)). Severing the Center's petition and proceeding separately with the issue it intends to raise is neither necessary for the Center to secure judicial review nor an efficient use of the Court's resources.

As EPA explained in its pending motion for abeyance, EPA has announced an efficient proposed schedule for completing its reconsideration of the action challenged, the Particulate Matter National Ambient Air Quality Standard ("NAAQS") Decision,[1] with a final new action anticipated in Spring 2023. *See id.* at 4. In light of this, in these consolidated cases EPA has sought a defined further term of abeyance roughly keyed to this anticipated timeframe, until March 1, 2023. No Petitioner other than the Center has opposed this requested abeyance. Movant-intervenors also have not opposed.

---

[1] "Review of the National Ambient Air Quality Standards for Particulate Matter," 85 Fed. Reg. 82,684 (Dec. 18, 2020).

The Center's argument is, essentially, that it wishes to have the particular issue it raises decided as soon as possible—notwithstanding that EPA is actively reconsidering the action it is challenging. The Center's rationales for litigating its petition now are weak, at best.

As explained in EPA's motion for an abeyance, it is not possible to determine what issues will remain live and will continue to be raised following EPA's reconsideration, including the issue the Center seeks to litigate. *See* EPA Motion for Abeyance at 8. What *is* certain, however, is that litigating the Center's petition now would require this Court to conduct judicial review *twice* relating to the particulate matter NAAQS, rather than considering all challenges together, on the same, complete record, as is the Court's standard practice. *See id.*

The Center believes that EPA's reconsideration of the Particulate Matter NAAQS decision would benefit from this Court's rendering an opinion during the pendency of its reconsideration. Essentially, the Center wishes the Court to advise EPA regarding its pending reconsideration, rather than review that reconsideration once completed. Putting aside the fact that this is not the proper role for the Court, EPA's anticipated timeframe for reconsideration is rapid for an agency action, particularly one of this nature, with EPA suggesting it will issue a proposed action in Summer 2022 and a final decision in Spring 2023. Any decision by this Court—even if litigation of the Center's issues were to occur immediately—would

therefore come late in EPA's process. It may come after that process is completed. Any purported benefit of litigating the Center's issues now is thus limited, at best.

The Center's claim that the Court should address its petition now, even though EPA is reconsidering the relevant agency action, because it may otherwise be "hard for the Center to get meaningful relief," Center Motion to Set Briefing Schedule at 4, is also unpersuasive. The Center will still be able to get meaningful relief in the same way that petitioners do in any Endangered Species Act ("ESA") or Administrative Procedure Act action, and in the same way that all other Petitioners in this case plan to do so: they may challenge the result of the reconsideration in Court and obtain a remand of the decision if the Court finds a violation. The Center's citation to 50 C.F.R. § 402.14(a), which provides that "an agency shall review its action at the earliest possible time to determine whether any action may affect listed species or critical habitat," does not mean that EPA should have already conducted any ESA review or consultation on its potential future action on reconsideration.[2] Center Motion to Set Briefing Schedule at 4. Nor is

---

[2] While courts have found that 50 C.F.R. § 402.14(a) requires an action agency to review ESA impacts prior to rendering a final decision, EPA retains considerable discretion to determine the appropriate point during the decision-making process at which to review whether a proposed action may affect listed species or critical habitat. *See Center for Biological Diversity v. EPA*, 861 F.3d 174, 188 (D.C. Cir. 2017) (cited by the Center and holding that EPA violated the ESA by not making an effects determination prior to issuing its final agency action); *W. Watersheds Proj. v. Matejko*, 468 F.3d 1099, 1108, 1110 (9th Cir. 2006) (even if an agency has

this petition for review the proper vehicle for Plaintiffs to challenge the timing of ESA review for a potential future action.

*If* the Center is correct that EPA has not fulfilled some obligation under the ESA, and *if* the Center is correct in speculating that EPA will not moot the issue by fulfilling any obligation during reconsideration, then the Center can presumably bring that claim and get whatever relief is appropriate in response to any EPA decision following reconsideration. But the Center is not being denied relief by virtue of an abeyance. Nor would abeyance constitute a "stay of" or "pre-authorization to violate" EPA's obligations under the Endangered Species Act, Center Motion to Set Briefing Schedule at 4-5.[3] On this puzzling line of logic, *any* abeyance in *any* case seeking judicial review of agency action would be a potential "stay" of an alleged agency legal obligation or "pre-authorization to violate" the law for a period of time, because it would delay the potential for remand of the challenged decision. The Center's argument is simply another way of saying "the

---

discretion to take an agency action in the future and is likely to do so, the obligation to consult applies only if and when the agency actually takes that affirmative agency action). An agency cannot assess whether its "action may affect listed species or critical habitat" until there is a proposed agency action to evaluate. 50 C.F.R. § 402.14(a).

[3] Further, the Center's implication that EPA intends to violate the ESA or wants to undergo the lengthy process of reconsideration only to issue an unlawful decision is nonsensical and contradicts the presumption of regularity given to agency decisionmaking.

Center opposes an abeyance because it disagrees with EPA's decision." The real stakes here are simple: An abeyance will efficiently result in judicial review in a single set of consolidated challenges to EPA's subsequent action. And, again, that action is expected to be forthcoming in Spring 2023.

The Center's remaining arguments fare no better. *See id.* at 5-7. EPA will evaluate its legal obligations under all applicable laws before taking any action. Of course, if EPA determines that its proposed action will not affect listed species or designated critical habitat or that it lacks discretion to consider such impacts within the scope of its action, no further action under the ESA would be required. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 475 (D.C. Cir. 2009); *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 668-69 (2007) (citing 50 C.F.R. § 402.03); *Karuk Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006, 1020 (9th Cir. 2012) (*en banc*).

Nor are the Center's overtures to the "capable of repetition but evading review" doctrine sound. First, the Center concedes that its "cycle of claiming challenges" that are "mooted by reconsiderations" has not occurred. Center Motion to Set Briefing Schedule at 5-6. Indeed, this concern is facially unlikely to occur on a five-year review cycle—and the Center gives no persuasive reason to assume it will occur here, even after EPA's decision on reconsideration. Even assuming that EPA's obligation under the five-year review cycle for NAAQS, *see*

42 U.S.C. § 7409(d), would run from the 2020 final action rather than from the date of the final reconsideration action, an EPA decision in Spring 2023 leaves time for judicial review before 2025. Second, even if this were not the case and judicial review were for some reason not fully complete by 2025, the Center could raise this argument *at that time*, as a basis to assert that any 2025 action should not moot its challenge.

For the reasons stated above and in its motion for abeyance, EPA respectfully requests that the Court deny the Center's motion, order that these consolidated cases be placed into abeyance until March 1, 2023, with status reports due 90 days after the Court's entry of this order and every 90 days thereafter.

Respectfully submitted,

Dated: August 26, 2021

/s/ Benjamin Carlisle
BENJAMIN CARLISLE
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 514-9771
Email: benjamin.carlisle@usdoj.gov

DEVON LEA FLANAGAN
Wildlife and Marine Resources Section
P.O. Box 7611

Washington, DC 20044
Phone: (202) 305-0201
Email: devon.flanagan@usdoj.gov

*Counsel for Respondents Environmental Protection Agency, et al.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d), I hereby certify that the foregoing complies with the type-volume limitation because it contains 1,419 words, according to the count of Microsoft Word.

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

/s/ Benjamin Carlisle
BENJAMIN CARLISLE